The State vs. Mayor and Aldermen, City of Savannah.

*Mandamus.*

The Jail in the City of Savannah, must, under the Legislative Act of 1822, taken in connexion with prior acts and circumstances, be considered as the *County* Jail, and as such, liable to the control of the Legislature, and the possession of the Sheriff.

If a party on a return to an alternative mandamus, shew cause against the admission or restoration of a person to an office on the ground of non-election, he must make a *direct* and issuable denial of the fact.

*Private* Corporations cannot be deprived of their franchises, but by a judicial judgment upon a *quo warranto*, but *public* Corporations created for the purposes of City government, may be controlled and have their Constitutions amended and altered by the Legislative power.

If a statute destroys the character in which persons have acted in a civil or public trust, without pointing out a new mode in which the trust is to be performed, the latter is also at an end.

If a Corporation be dissolved or surrendered, the offices under it share its fate.

The Legislature have power to destroy all offices, (except those held by Constitutional officers,) which are made for Civil government, and thus to put an end to the functions of the incumbents, before their term of office shall have expired.

## By WAYNE, Judge.

This is an application by *Abraham D'Lyon* praying that a writ of *Mandamus* might be directed to the Mayor and Aldermen of the city of Savannah, commanding them to surrender to him the Jail of the county of Chatham and its appurtenances, and the custody of the prisoners confined in the same, which the petitioner claims in virtue of his being the Sheriff of the county of Chatham—an alternative Mandamus was awarded, to which the Mayor and Aldermen have made a return, protesting that *Abraham D'Lyon* is not the Sheriff of the county of Chatham, duly commissioned, or sworn, or qualified to act acording to law—denying his legal right to the control of the building commonly called and known as the Jail of Chatham county, or the custody of the prisoners therein confined, in manner and form as he has alleged—declaring that the property in the Jail and the lots upon which it is built, are vested in the Mayor and Aldermen; stating that in

virtue of the Acts of the General Assembly, the Mayor and Aldermen are entitled to the care, management, direction and inspection of the Jail of *Chatham* County : that the Mayor and Aldermen, as former commissioners of the Jail, had not the possession of the Jail, nor the custody of the prisoners in it, and that one *Hugh McCall*, is, and was at the time when the mandamus was served, the Jailor of the county of Chatham, duly appointed, and as such entitled to the possession of the Jail and the custody of the prisoners. It is only necessary for me to remark upon the protest in the return, that *A. D'Lyon* is not the Sheriff of the county of Chatham, duly commissioned or sworn, or qualified to act according to law—that the denial of his official character is not pleaded with such certainty as is required in a return to a writ of mandamus, shewing cause against the admission or restoration of a person to an office or appointment, on the ground of non-election. All the authorities declare, that there should be a *direct* denial of the election of the person, and the requirement is a reasonable one, for without it no issue can be made for a jury, to try the fact upon which the admission or restoration depends. Nor is the insufficiency of the pleading in this helped by the manner in which the petitioner has sta ed his official character, for the allegation upon his part that he is the Sheriff, is a declaration of the character in which he sues, made with sufficient certainty to have enabled the Mayor and Aldermen to tender an issue by a direct denial of the fact. But it is also declared in the return that the Jail and the lots upon which it stands, are the property of the Mayor and Aldermen, and therefore subject only to their control. And in proof of this claim, the acknowledgment in the preamble of the Act of 1801, that the Jail had been built by city funds, was strongly commented upon. That the successive boards of Aldermen, acting as commissioners of the county Jail have expended large sums annually since 1793, in the building and keeping in repairs the county Jail, to which there should have been a general contribution by the people of the

county, and for which the day of reckoning may not be far distant, cannot be denied, and though it is not the fact that the Mayor and Aldermen have a property in the site of the Jail, yet it must be admitted that it formed a part of the town common which by the Act of 1760, is declared to be common property of the lot holders of Savannah. But neither the advances of money to put up the buildings, nor the fact that it is erected upon lots belonging to and within the chartered limits of the city of Savannah, can give to the Mayor and Aldermen such an exclusive ownership of the premises, as will authorize them to direct it to any other object than a county Jail, or to exclude the Sheriff of the county from using it as such, if the Legislature has repealed the laws, which made the Mayor and Aldermen the commissioners of the Jail. This may be made manifest from the circumstances under which this Jail was built, and the uninterrupted admission of every Board of Aldermen for more than twenty years. The Mayor and Aldermen were first made commissioners of the county Jail in 1791, and as the records of Council will show, their attention was drawn in a year or two after, to the insecure and insufficient county prison which then stood upon Lot letter "G." and which had been set apart by the Act of 1760 as a permanent scite for a public prison. In May, 1796, the City Council resolved to build a work-house, and also a prison, and marked out the sites for both of them, but the want of funds and the distresses caused by the calamitous fires of November and December, 1796, prevented them from making any progress in their design. In December, 1798, the attention of Council was again directed to this subject, and under the pressure of exigencies which would no longer permit this work to be delayed with safety to the people of this city, the Council resolved that the work-house and Jail should be comprized in one building, and earnestly recommended the immediate purchase of materials for it. At the same time the committee declared the state of the City Treasury, and the county funds, to be inadequate to the purpose, and urged an im-

mediate sale of Lots to carry on the work. The views of the Council, at that time, in regard to the interest or property it was to have in the building, may be collected from the ensuing extract of this report. The committee say, " that although the erecting of a Jail is the duty of the county at large, as it will be for their benefit and use, and ought to be their property, yet it appears it will be in vain to wait .he slow and ineffectual progress of county funds, for the accomplishment of an object in which the city is so materially interested, and that the safety and reputation of the city, render it the duty of the corporation without delay to apply such funds as can be raised for this valuable purpose, hoping for reimbursement hereafter, by such sums of money belonging to the county as may come into their hands." And there can be no doubt that the source to which the Council looked for reimbursement, was so much of the proceeds of the annual tax, which the justices by the Act of 1796, were empowered to levy and to apply to the building and repair of Court Houses and Jails, in the different counties in the State. Here then we see the corporation beginning a work, without authority to levy a tax to defray the expense of it, and apparently without expecting immediate assistance from the funds of the county to complete their design, and if the investigation ceased here, it would be difficult to deny to the Mayor and Aldermen an exclusive property in this building. But it will be found by an examination of their own proceedings on the 17th December, 1798, and before the building had been begun, that the Mayor and Aldermen resolved to further the work by the aid of county funds or property, and determined to use the authority, which they believed they had as commissioners of the County Jail, by selling the old County Jail and the Lot upon which it stood, and to apply the proceeds in part to the execution of the said Jail. This was done, and the proceeds were so applied. This is not the only instance of the Corporation acting as commissioners of the Court House and Jail, applying the county funds to their new design,

for on the 25th February, 1799, they applied to the Governor of the State of Georgia for the sum of one hundred pounds, which had been appropriated by the Legislature in 1795, to each county for a Court House and Jail, received the amount, and placed it in the City Treasury. Since the year 1801 the Mayor and Aldermen have also received on the same account seven thousand dollars, and though a large balance is due to the city by the county, for disbursements in erecting and keeping the Jail in repair, it certainly cannot be the subject of complaint, nor any wrong be done to the Mayor and Aldermen if their claim of exclusive right and property in this building is rejected, and if they are made to look for the repayment of their advances from that source upon which their predecessors relied, when it was determined to erect a Jail. But this claim to exclusive property in the premises can have no foundation, when we view the admissions of the Mayor and Aldermen upon this subject, as manifested by their acts and advances. In December 1798 they determined to build a County Jail, and used their powers in many instances as commissioners of the county Jail. To effect this object, county funds are applied by them in common with their own to such purpose. On the 19th October, 1801, after the present Jail had been completed, by a resolution of their own body, they applied to the Legislature to have vested in them the sole and entire government of the Jail of *Chatham* County. Such an Act was passed, and on the 1st February, 1802, they accept the trust and advertise for the election of Jailor, who, by the same ordinance, (in which they speak of themselves as commissioners of the Jail of *Chatham* County,) is sworn in as the Jailor of *Chatham* County. The title and preamble of the Act of 1801, with their consent designate this building as the Jail of the County of *Chatham*; and lastly, from the year 1801 to 1819, they apply for and receive money at different times from the Justices of the Inferior Court, for advances made by them on account of the Jail of *Chatham* County. I cannot but believe that enough has been shown to

disprove the claim of all exclusive property in these premises. I shall now proceed to examine the validity of so much of the return as alleges, that the Mayor and Aldermen by the Acts of the General Assembly are entitled to the management, care, inspection, and direction of the Jail of the County of Chatham, in connexion with the declaration, that *Hugh McCall* is and was at the time the *Mandamus* was served, the Jailor of the County of *Chatham*, duly appointed, and as such, entitled to the possession of the Jail, and the custody of the prisoners confined in it. It was argued that the right of inspection and direction, with the power to appoint a Jailor, were vested franchises in the Corporation of which the Legislature could not deprive it but with their own consent.    These parts of the return are considered connectedly, for as it will not be pretended that *Hugh McCall* has any official existence as Jailor, independently of that which he derived from his election under the Act of 1801, the decision of both rights will be determined by the same principle.    The Mayor and Aldermen by the 15th December, 1791, were made commissioners of the Court House and Jail of *Chatham* County, and their right as such was recognised in two Acts of the General Assembly which were subsequently passed, and they remained only commissioners until the Act of the 30th November, 1801, when they were declared to be " solely and exclusively the commissioners of the Court House and Jail of *Chatham*, with full power and authority to appoint a Jailor."    If we reflect upon what were the powers and duties of the Justices of the Inferior Court as commissioners of Jails, we shall be at no loss to determine the extent of the powers and rights, devolving upon the Mayor and Aldermen as such, for no other can they be supposed to possess unless they are expressly given, or may fairly be deduced by reference from the statutes which make them commissioners.    The powers of the Justices in this case were altogether of a public nature, and the Mayor and Aldermen only took the place of the Justices with the additional right to appoint a

Jailor, by whom and themselves the same public functions were to be performed, which had been previously executed by the Justices, and the Sheriff of the County. It is in this light that each successive council have viewed themselves, and the present Board of Aldermen recognized it, and admitted the existence of this public relation to the county in themselves, as commissioners of the Jail, when by their resolution of the 30th of October last, the Mayor was authorised to apply to the delegation of *Chatham* County in the Legislature, in behalf of the Corporation, requesting their exertions to have repealed the Law of the State, vesting the control of the Court House of *Chatham* County in the Mayor and Aldermen of the City of Savannah. If the duties or power given to the Mayor and Aldermen, as commissioners of the Court House and Jail, were of a public kind, there can be no doubt then, that the repeal of the law which made them commissioners, is within those boundaries of legislative authority over Corporations, which have been fully discussed in this country, and may be considered as permanently settled. The boundaries are, that private corporations cannot be deprived of their franchises but by a judicial judgment upon a *quo warranto*, and that all such as are made merely for the purpose of City government, or town police, are so far the creatures of the Legislature, that they may be controlled by it, and have their Constitutions altered and amended by the Government in such manner as the public interest may require. *Terrett, et. al. vs. Taylor, et. al.* (9th *Cranch*, 43.) *Dartmouth College vs. Woodward*, (4 *Wheaton*, 518.) The Corporation of Savannah is of the latter kind, and it has no power which is not held at the will of the Legislature. It cannot be necessary to enter into any argument to show that the Act of 1801, making the Mayor and Aldermen commissioners of the Court House and Jail is repealed by the Statute of 1822, under which the petitioner claims the possession of the Jail, and as to the right which is still claimed to elect a Jailor, it need only be observed to show how untenable such a position is,

that if the statute destroys the character in which persons have acted in a civil or public trust, without pointing out a new mode how the trust is to be performed, the trust and the character are both at an end. In this instance however, we are not left to conjecture. The intention of the Legislature by the introduction of the Sheriff in conjunction with the Justices into the Act, manifests an obvious intention to put the Jail upon the old footing, and the utmost certainty upon this point is attained, when the Act declares, that the Jail shall be vested in the Justices and the Sheriff, under the general Laws regulating County Jails in this State. Nor can the declaration that Major *McCall* is the Jailor of the County of *Chatham* deprive the Sheriff of the remedy for which he seeks. The appointment of Jailor was made by the Council under the Act of 1801, and though a short time of the term for which Major *McCall* was elected, is yet to expire, so soon as the Law was abrogated, which gave existence to his place, the place fell with it. The principle is indisputable that if a corporation be dissolved or surrendered, the offices under it share its fate. (*Comyn's* Dig. 5 vol. 156.) Whenever the Legislature deem it expedient, (excepting in cases of constitutional officers strictly speaking,) to abrogate those appointments which are made for civil government, without making any provision for the continuance in office of those who fill them, until the term for which they were elected shall have expired, the statute for such purpose is to be obeyed; such a measure cannot be viewed as a violation of any compact between the officer and the State, for the condition upon which all offices are accepted, in relation to the time of enjoyment is, the continuance of the office itself. This is the practice of General and State Governments, and no other principle can be applied to this subject which would not narrow the powers of legislation into an inability to pass laws which the public good may require, without delay. The only remaining part of the return to be considered, is that which states, that the Mayor and Aldermen, as

Part i.—H. 2.

former commissioners of the Jail, had not the possession of it, nor the custody of the prisoners confined in it. If it had been intended by the Mayor and Aldermen to disavow all control over the Jail, and to deny that it was not withheld from the Sheriff by a person whom they viewed as their officer, and who acted by their orders—a plain statement of the fact would have relieved me from the labour of this decision. I would have suppressed this Mandamus and would have directed a peremptory Mandamus to the Jailor to surrender the Jail and the prisoners to the Sheriff, considering it to be a clear case for the exercise of such a power in the first instance. But though the Mayor and Aldermen had not the possession of the Jail and the custody of the prisoners, facts may be collected from the documents annexed to the petition of the Sheriff, which shew by what means the statute of 1822 has not been put in force. On the 1st of January last, an application was made by the Sheriff to the Mayor for an order to receive the keys of the Jail. The Mayor replies, that his letter will be communicated to Council the ensuing day. The subject is referred by Council to a committee, to report on the following Saturday. In the mean time, the sheriff is ordered by the Justices of the Inferior Court "to proceed to the Jail and demand possession of it." The order of the Justices was served upon Major *McCall*, and he replies to it by letter, saying, he was reluctantly compelled to decline the surrender of the keys of the Jail, in consequence of an order which he had received from the Mayor, commanding him to retain them, until Council shall direct to whom they shall be delivered. On *the 14th of* January, another application was made to the Mayor, by the Sheriff, for possession of the Jail and the custody of the prisoners, and he again declines complying until it has been referred to Council. I cannot close my eyes to the source from which the obstruction to the operation of the Act of 1822 has arisen, and against it must the remedy be directed. In fine, the views which I entertain upon this subject and which are the result of laborious research,

[State, vs. Mayor and Aldermen of Savannah.]

are, that the Act of 1822, vesting the Jail in the Justices and the Sheriff, is an entire repeal of the powers which the Mayor and Aldermen had, as former commissioners, under the Acts of 1791 and 1801: that the Jail is the County Jail, and subject to such regulations, as tne Legislature may, from time to time enact; and that the only officers who can by law exercise any control over it, are the Justices of the Inferior Court and the Sheriff of the County of *Chatham.*

It is therefore *ordered,* that a *peremptory Mandamus* be directed to the Mayor and Aldermen of the city of Savannah, commanding them to admit *Abraham D'Lyon,* the Sheriff of the county of *Chatham,* to the possession of the Jail of *Chatham* County, and to the custody of the prisoners confined in the same.

T. U. P. CHARLTON, & M. SHEFTALL, Sr., for plaintiff—J. C. NICOLL, & W. W. GORDON, for defendant.